790 A.2d 989

Jeffrey B. ALBERT, Thomas R. Collins, Jules Mermelstein, S. Lawrence Pauker, Robert J. Pesavento, Ira S. Tackel and Ann Thornburg Weiss, Petitioners

v.

2001 LEGISLATIVE REAPPORTIONMENT COMMISSION, Respondent.

Kenneth E. Davis, Joseph M. Manko, Charles J. Bloom, Rocco J. Burdo, Neil P. Clark, Matthew J. Comisky, James S. Ettelson, Lewis F. Gould, Evalyn B. Kadish, J. Randolph Lawlace, Ora R. Pierce, David A. Sonenshein, Felice G. Wiener, and Mary Wright, Individually and Collectively as the Board of Commissioners of The Township of Lower Merion, Township of Lower Merion, Dennis J. Sharkey, and Nora Winkelman, Petitioners

v.

2001 Legislative Reapportionment Commission of the Commonwealth of Pennsylvania, Respondent.

Gerald A. Francis, Jerold Novick, Jeffrey M. Lindy, David Gold, Robert McL. Boote, Kenneth L. Brier, Maxine Goldberg, Bob Gray, Mary Ellen Yuhas Hagner, Roger Moog, Judy Strazzella, Mimi Winkler, Fenton Fitzpatrick, Anne Greenhalgh, John Joseph, Lynn Manko, Bruce D. Reed, and Neighborhood Club of Bala Cynwyd, Petitioners

v.

2001 Legislative Reapportionment Commission, and the Commonwealth of Pennsylvania, Respondent.

William J. O'Brien, II, Petitioner

v.

2001 Legislative Reapportionment Commission, Respondent.

Senator Lisa M. Boscola, Senator Charles W. Dent, Mayor Thomas Goldsmith, Charles D. Snelling, and Lehigh Valley Coalition for Fair Reapportionment, Petitioners

v.

Commonwealth of Pennsylvania, 2001 Legislative Reapportionment Commission, Respondent.

State Representative Kelly Lewis, Petitioner

v.

Commonwealth of Pennsylvania, 2001 Legislative
Reapportionment Commission, Respondent.

Dennis J. Baylor, Petitioner

v.

2001 Pennsylvania Legislative Reapportionment Commission,
Secretary of the Commonwealth, Respondent.

Carlos A. Zayas and Valentin Rodgriguez, Jr., Petitioners

v.

2001 Legislative Reapportionment Commission, Respondent.

Langhorne Virginia Brickwedde, Petitioner

v.

2001 Legislative Reapportionment Commission, Respondent.

In re Appeal of the Township of Ross, the North Hills School
District, Yvonne Brandon, Charles Delehanty, Nelson Erb, Wil-
liam Linkenhiemer, Eloise Peet, Daniel L. Demarco, John A.
Adamczyk, Daniel P. Kinross, James Atzert, David J. Mikec,
Gerald R. O'Brien, Peter A. Ferraro, Carol A. Grom, Al Bark-
ley, Arlene Bender, Sylvia K. Lynn, Cheri R. Neely, Jennifer M.
Rush, Ted J. Zobb, Jr., Richard Pelot and Edward Wielgus,
Petitioners

v.

Commonwealth of Pennsylvania Legislative Reapportionment
Commission, Respondent.

The Board of Commissioners of Radnor Township
and the League of Women Voters of Radnor
Township, Petitioners

v.

Pennsylvania Legislative Reapportionment
Commission, Respondent.

Supreme Court of Pennsylvania.

Argued Feb. 5, 2002.

Decided Feb. 15, 2002.

Jeffrey B. Albert, Thomas R. Collins, Jules Mermelstein, S. Lawrence Pauker, Robert J. Pesavento, Ira S. Tackel and Ann Thornburg Weiss, petitioners pro se.

Gilbert P. High, Thomas D. Rees, Norristown, for petitioners, Davis et al.

Jeffrey Marc Lindy, Robert M. Boote, petitioners pro se and for petitioners, Francis et al.

William J. O'Brien, II, petitioner, pro se.

Steven Eric Hoffman, Allentown, Saleem S. Saab, Philadelphia, Thomas C. Sadler, Allentown, for petitioners Boscola et al.

Kelly Richard Lewis, petitioner, pro se.

Dennis J. Baylor, petitioner pro se.

John Bartley Delone, Harrisburg, for participant-respondent, Secretary of the Com.

Carlos A. Zayas Valentin Rodriguez, Jr., petitioners pro se.

Langhorne Virginia Brickwedde, petitioner pro se.

C. Donald Gates, Michael J. Witherel, Pittsburgh, for Tp. of Ross et al.

Timothy Jason Bish, for petitioner Amicus Curiae, Borough of Aspinwall.

David Gordon Blake, Washington, DC, for petitioners Bd. of Com'rs of Radnor Tp. et al.

Charles E. O'Connor, Neil G. Epstein, David W. Craig, Mike Fisher, Bridget Montgomery, Kathleen A. Gallagher, for respondent, Reapportionment Com'n.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## *ORDER*

PER CURIAM.

**AND NOW,** this 15th day of February, 2002, upon consideration of the above appeals, we find that the Final Reapportion-

ment Plan of the Pennsylvania State Legislative Reapportionment Commission filed on November 19, 2001, is in compliance with the mandates of the Pennsylvania Constitution and the United States Constitution and therefore shall have the force of law. It is hereby ordered that said Plan shall be used in all forthcoming elections to the General Assembly until the next constitutionally mandated reapportionment shall be approved.

Opinions to follow.

## *OPINION*

Chief Justice ZAPPALA.

These actions were commenced in December of 2001, when the various appellants filed petitions for review in this Court.[1] The appellants challenged the Final Reapportionment Plan (final plan) unanimously adopted by the Pennsylvania Legislative Reapportionment Commission (Commission) on November 19, 2001. By order dated January 11, 2002, we granted the Commission's petition for consolidation of these actions and, on February 5, 2002, we heard oral argument on the matter. For the reasons that follow, we hold that the reapportionment plan complies with the requirements of both the Pennsylvania Constitution and the United States Constitution and therefore dismiss the appeals.[2]

Since the 1968 amendment to Article II, Section 17 of the Pennsylvania Constitution, the Commission has had the obligation of reapportioning the legislative districts of this Commonwealth in each year following the year of the federal decennial census. PA. CONST. art. II, § 17.[3] The Commission consists of five members, four of whom are the majority and

1. The particular appellants in each of the eleven actions consolidated in this appeal are identified in detail in the portion of the opinion addressing their respective claims.

2. This matter is properly before our Court pursuant to PA. CONST. art. II, § 17(d), which provides that "any aggrieved person may file an appeal from the final plan directly to the Supreme Court within thirty days after the filing thereof."

3. Prior to the 1968 amendment to the Pennsylvania Constitution, the full General Assembly had the constitutional obligation to reapportion the legislative districts.

minority leaders of both the Senate and the House of Representatives or deputies appointed by each of them. *Id.* § 17(b). The fifth member, a chairman, is selected by the four other members or, if they fail to make a selection within the time prescribed, by the Supreme Court. *Id.*[1] The Commission acts by a majority vote of its membership. *Id.* § 17(a).

In reapportioning the legislative districts, the Commission must follow the constitutional framework set forth in Article II, Section 16, of the Pennsylvania Constitution, which provides:

The Commonwealth shall be divided into fifty senatorial and two hundred three representative districts, which shall be composed of compact and contiguous territory as nearly equal in population as practicable. Each senatorial district shall elect one Senator, and each representative district one Representative. Unless absolutely necessary no county, city, incorporated town, borough, township or ward shall be divided in forming either a senatorial or representative district.

PA. CONST. art. II, § 16.

Thus, *inter alia,* the plain language of Section 16 mandates: (1) that the districts are composed of compact and contiguous territory as nearly equal in population as practicable; and (2) that the various Commonwealth subdivisions are not divided when forming districts, unless absolutely necessary. Along with placing the obligation of reapportionment with the Commission, Article II, Section 17, provides that this Court's review of challenges to the Commission's final plan is limited to determining whether appellants have established that the final plan is contrary to law. PA. CONST. art. II, § 17(d).

This Court has examined these provisions in great detail in the three reapportionment cases decided by this Court since the 1968 constitutional amendment, *In re Pennsylvania Legislative Reapportionment Commission (In re 1991 Reapportionment),* 530 Pa.335, 609 A.2d 132 (1992), *In re Reapportion-*

4. Our Court, upon the request of the party leaders, appointed the chairman of the Commission in the instant case.

*ment Plan for the Pennsylvania General Assembly (In re 1981 Reapportionment)*, 497 Pa. 525, 442 A.2d 661 (1981), and *Commonwealth ex rel. Specter v. Levin*, 448 Pa. 1, 293 A.2d 15 (1972), all of which rely upon the United States Supreme Court's seminal decision in *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). In each state reapportionment case, this Court concluded that the reapportionment plan adopted by the Commission passed constitutional muster. We reach the same conclusion here.

In *Specter*, our Court upheld the 1971 reapportionment plan, the first to be effectuated under the amendment to Article II, Section 16. We relied upon the United States Supreme Court's pronouncement in *Reynolds*, that the "Equal Protection Clause requires that a State make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as practicable." 293 A.2d at 18 (citing *Reynolds v. Sims*, 377 U.S. at 577, 84 S.Ct. 1362). We held that this federal requirement of equal protection is incorporated as a matter of state constitutional law in Article II, Section 16, which provides that districts be "composed of compact and contiguous territory as nearly equal in population as practicable...." This Court held that, as a matter of both federal and state law, substantial equality of population among the various districts must be the controlling consideration in the apportionment of legislative seats. 293 A.2d at 18; *see also In re 1981 Reapportionment*, 442 A.2d at 665.

Relying again on *Reynolds*, we emphasized that "permitting deviations from population-based representation does not mean that each local government unit or political subdivision can be given separate representation, regardless of population...." *Id.* at 18–19 (citing *Reynolds v. Sims*, 377 U.S. at 581, 84 S.Ct. 1362). This Court concluded that the Senate and House districts, with total population ranges of deviation of 4.31% and 5.46%, respectively, achieved the required overriding objective of substantial equality of population. It further determined that the Commission's final plan properly maintained the integrity of political subdivisions, to the extent

that it was possible. This Court noted that a certain amount of subdivision fragmentation is inevitable since most political subdivisions will not have the "ideal" population for a House or Senate district. *Id.* at 23.[5] Finally, as to compactness, we ruled that a "determination that a reapportionment plan must fail for lack of compactness cannot be made merely by a glance at an electoral map and a determination that the shape of a particular district may not be aesthetically pleasing." *Id.* at 24.

We considered the Commission's second reapportionment plan in *In re 1981 Reapportionment* and concluded that the 1981 plan reflected the Commission's adherence to the goal of equal population among legislative districts. 442 A.2d at 665. This Court rejected the appellants' contentions that departures from compactness and subdivision boundaries would be constitutionally permissible only if "absolutely necessary" to survive the federal equal protection analysis. 442 A.2d at 666–667. We recognized that the concerns for compactness and adherence to a political subdivision line must yield to the overriding objective of substantial equality in population among districts. *Id.* at 668. We stated, "[m]ere dissatisfaction with the fact that certain political subdivisions have been divided or have been included within particular legislative districts is not sufficient to invalidate the Final Reapportionment Plan as unconstitutional." *Id.*

This Court reiterated these same principles in *In re 1991 Reapportionment*, where the appellants again argued that the reapportionment plan violated constitutional requirements of compactness and contiguity and the prohibition against division of political subdivisions unless absolutely necessary. We rejected these arguments as we did in the prior cases.

**5.** In *Specter*, it was undisputed that the Commission's plan provided for districts of "contiguous" territory. We defined a contiguous district as "one in which a person can go from any point within the district to any other point [within the district] without leaving the district," or one in which "no part of the district is wholly physically separate from any other part." *Id.* at 23.

■ In examining the particular claims raised by each appellant herein, we must, as a threshold matter, first consider the Commission's contentions that five petitions should be dismissed for lack of standing. Specifically, the Commission alleges that the following entities or representative parties lack standing: (1) the Lehigh Valley Coalition for Fair Reapportionment (228 MM 2001); (2) the Board of Commissioners of the Township of Lower Merion, the Township of Lower Merion, and Dennis J. Sharkey and Nora Winkelman, in their representative capacities as Chairs of the Republican and Democratic Committees (231 MM 2001); (3) the Neighborhood Club of Bala Cynwyd (236 MM 2001); (4) the Board of Commissioners of Radnor Township and the League of Women Voters of Radnor Township (7 MM 2002); and (5) the North Hills School District and the Township of Ross (134 WM 2001). The Commission maintains that these "non-voting" appellants are not "aggrieved persons" as required by Article II, Section 17(d) of the Pennsylvania Constitution and, therefore, lack standing.

The Commission points out that Article II, Section 17(d) provides that "[a]ny aggrieved person may file an appeal from the final plan directly to the Supreme Court within thirty days after the filing thereof." The Commission notes that neither the Constitution, nor this Court, has defined the term "aggrieved person" for purposes of Section 17(d). Thus, the Commission looks to our decision in *William Penn Parking Garage, Inc. v. Pittsburgh*, 464 Pa. 168, 346 A.2d 269, 280 (1975), for the following, well established, test for standing:

[The party] must have a direct interest in the subject-matter of the particular litigation, otherwise he can have no standing to appeal. And not only must the party desiring to appeal have a direct interest in the particular question litigated, but his interest must be immediate and pecuniary and not a remote consequence of the judgment. The interest must also be substantial.

Applying this definition of "aggrieved person" in the context of a challenge to a reapportionment plan, the Commission maintains that the determinative inquiry is whether a particu-

lar appellant has a "substantial, direct and immediate" interest in the subject matter. According to the Commission, the subject matter of such a challenge is unquestionably an individual's right to vote and to have such vote counted. The Commission, therefore, maintains that any non-voting appellants lack standing to bring a challenge.

We agree that it is the right to vote and the right to have one's vote counted that is the subject matter of a reapportionment challenge. Significantly, as noted by the United States Supreme Court in *Reynolds v. Sims*, "[t]he right to vote is personal" and the rights sought to be vindicated in a suit challenging an apportionment scheme are "personal and individual." 377 U.S. at 554–555, 561, 84 S.Ct. 1362 (citing *United States v. Bathgate*, 246 U.S. 220, 227, 38 S.Ct. 269, 62 L.Ed. 676 (1918)); *South v. Peters*, 339 U.S. 276, 280, 70 S.Ct. 641, 94 L.Ed. 834 (1950). Thus, we agree with the Commission that any entity not authorized by law to exercise the right to vote in this Commonwealth lacks standing to challenge the reapportionment plan.[6]

Having concluded that standing exists, we now consider the substantive claims raised by the various appellants. As noted, the limited scope of review requires this Court to determine whether the final plan satisfies the constitutional requirement that the districts, in both houses of the state legislature, are as nearly of equal population as is practicable and that no political subdivision shall be divided in forming such districts unless absolutely necessary. In conducting this review, we must examine the final plan as a whole. We keep in mind that "to prevail in their challenge to the final reapportionment plan, appellants have the burden of establishing not

6. Although we hold that those unauthorized to vote lack standing to challenge the reapportionment scheme, in four of the five specific petitions that the Commission asserts a standing challenge, individual voters have also been named in the suit. Thus, the claims raised in these petitions are properly before the Court. The petition at 7 MM 2002, however, does not identify the appellants as individuals authorized to vote and, thus, we would normally dismiss this petition for lack of standing. Entry of such an order, however, would be moot given our disposition herein.

.... that there exists an alternative plan which is 'preferable' or 'better,' but rather that the final plan filed by the Pennsylvania Reapportionment Commission fails to meet constitutional requirements." *In re 1981 Reapportionment,* 442 A.2d at 665.

As required by the Pennsylvania Constitution, the final plan divides the Commonwealth into 50 senatorial districts and 203 representative districts. The challengers to the final plan assert, however, that the districts are not composed of compact and contiguous territory as nearly equal in population as practicable because, in creating the plan, political subdivisions were divided where it was not absolutely necessary.

Based upon the population figures from the 2000 census, the population of Pennsylvania is 12,281,054. The ideal population of each senatorial district would be 245,621; the ideal population of each house district would be 60,498. In the final plan submitted by the Commission, the population of senatorial districts ranges from 239,482 to 249,252, while the population of the house districts ranges from 58,751 to 62,099. The total range of deviation from the ideal population is 3.98% for the Senate and 5.54% for the House.

Several of the appellants raise substantially similar claims, alleging that the plan is unconstitutional because it fails to respect municipal boundaries and ward boundaries to the fullest extent possible or fails to provide for compact districts to the fullest extent possible. We emphasize that the challengers have focused primarily on the impact of the plan with respect to their particular political subdivision, rather than analyzing the plan as a whole, as is required under a proper constitutional analysis. This will become apparent as the individual petitions are addressed.[7]

The appellants in the action filed at 224 MM 2001 are registered voters from each of the seven wards of Upper Dublin, a Township of the First Class, in Montgomery County. They assert that the 2001 final plan fails to meet the constitu-

7. As noted earlier, appellants at 7 MM 2002 lack standing. Therefore, their claims will not be discussed.

tional test for minimizing divisions of political subdivisions, by dividing municipalities far more than any prior plan for the State House since the 1968 Constitution was adopted, without any supporting justification. They argue that an objective measurement of permitted municipal division establishes that the final plan doubles the number of divided municipalities and triples the number of municipalities divided beyond an objective permissible division. They complain that the plan divides ward boundaries unnecessarily and that two of the legislative districts within Upper Dublin are not compact. It is further asserted that Upper Dublin could have been divided among three compact State House districts without dividing any of its existing ward boundaries and without violating population equality criteria otherwise utilized by the Commission.

The appellants at 231 MM 2001 include: (1) individuals comprising the Board of Commissioners of the Township of Lower Merion, Montgomery County who identify themselves as residents, voters and taxpayers; (2) the Township of Merion; and (3) the Chairs of the Democratic and Republican Committees within Lower Merion and the Borough of Narbeth. They complain that the final plan divides Lower Merion into three House districts and divides two wards, Wards 2 and 13, between two House districts in violation of the state constitution. They argue that Lower Merion's population of 59,850 is close to the average population for a single district and the Commission failed to demonstrate that such division was absolutely necessary. It is further asserted that the final plan creates two districts that violate the compactness requirements of Article II, Section 16. It is requested that the reapportionment plan be remanded to the Commission with instructions to redraw the districts so that all residents within the boundaries of Lower Merion are included within a single House district.[8]

8. The appellants at 236 MM 2001 identify themselves as the directors of The Neighborhood Club of Bala Cynwyd, a civic association. They are also identified, however as residents, voters and taxpayers in Lower Merion Township. Their arguments reiterate those that are presented by the appellants at 231 MM 2001. In addition, they assert that the final plan violates Article I, Section 5 of the Pennsylvania Constitution

The appellant at 165 MM 2001 is a resident of the 33rd Division of the 21st ward of Philadelphia. He challenges the final plan on the basis that it divides the 21st ward into three separate House districts, and that it includes a portion of the 21st ward within the 194th District that is not a contiguous territory. It is asserted that the final plan ignores geographic, topographic and historic factors that render the 21st ward a unique contiguous territory and disregards a long-standing and profound sense of community shared among its residents. He claims that the division was not absolutely necessary as it is feasible to file a plan that includes the entire ward within one representative district.

The appellants at 228 MM 2001 challenge the final plan on the grounds that the 24th Senate district is not compact and contiguous. It is claimed that the requirements of contiguous and compact districts go beyond geographical concern and also embrace the concept of homogeneity of the district. They represent that the citizens of the Lehigh Valley perceive themselves an integrated social, economic and political unit and assert that senatorial districts should be designed to reflect such cohesiveness of communities. They argue that the final plan is unconstitutional because, by placing portions of Northampton County and Lehigh County into a district centered around Lansdale, Montgomery County, the Commission failed to take into consideration the homogeneity of the district and communities of interests. They further argue that the final plan has enhanced the representation of Philadelphia County and Allegheny County by diluting the voting power of citizens of the Lehigh County.

The appellant at 229 MM 2001 challenges the division of Monroe County into six Senate districts. He contends that

and the Fourteenth Amendment to the United States Constitution because the division of Lower Merion disenfranchises voters and interferes with the voters' right to free and equal election of the State House of Representatives, since the majority of the population in each of the House districts resides outside of Lower Merion. The appellants at 236 MM 2001 joined the brief filed at 231 MM 2001, which does not address the last claim, however. For this reason, we need not address that issue.

the final plan unnecessarily dilutes the influence of Monroe County residents to the benefit of Philadelphia County and Allegheny County. He claims that despite dramatic shifts of population across the Commonwealth, the final plan was created solely to protect incumbent state senators.

The appellant at 230 MM 2001 objects to the final plan on the basis that the Commission acted arbitrarily by using total population criteria in the apportionment process. He asserts, *inter alia*, that the inclusion of the population of three prisons within the 123rd House district artificially inflated the population by including disqualified voters and debased the votes of voters in surrounding districts. He further asserts that the 124th and 125th House districts violate the requirement that districts be compact and contiguous because a two-mile portion of uninhabited game land divides them. He also asserts that political gerrymandering denies him representative government.

The appellants at 233 MM 2001, residents of Berks County, assert generally that the final plan violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Voting Rights Act, 42 U.S.C. § 1973. One of the appellants describes himself as a "first generation [H]ispanic (Puerto Rican) with Spanish as a primary language" and part of an identifiable group suffering from a history of disenfranchisement or lack of political power. He requests that the 127th House district be maintained as status quo.[9]

The appellant at 234 MM 2001 contends that the final plan improperly divided the municipality of State College, and

9. The Commission states that Carlos Zayas and Valentin Rodriguez, appellants at 233 MM 2001, assert in conclusory terms, and with no factual basis, that the final plan violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Voting Rights Act, 42 U.S.C. § 1973. The Commission then goes on to refute an assumed argument pursuant to these provisions.

Appellants, however, do not set forth a detailed argument regarding these provisions. Moreover, both appellants appear to assert the Voting Rights Act in an attempt to preserve their claims in federal court. *See* Appellant Zayas Brief at 5; Appellant Rodriguez Brief at 3. Thus, there are no claims pending before us in this regard.

three wards within State College, between two House districts. She alleges that this resulted in unnecessary fragmentation that will lead to extraordinary voter confusion. It is requested that we direct the Commission to redraw the final plan so that all residents within the borough of State College are included in a single district.

The appellants at 134 WM 2001 challenge the final plan on the grounds that the division of Ross Township into four House districts was not absolutely necessary. They assert that Ross Township is the only first class township that has been split into four parts unjustifiably. Along with their petition for review, they submitted a proposed reapportionment plan to demonstrate that another feasible plan exists. They contend that the submission eliminates numerous split political subdivisions in the western part of the Commonwealth, while maintaining the same standard of population variation established by the Commission. The submission was provided to this Court for illustrative purposes only, as appellants acknowledge that they do not seek to have the submission adopted as a "better or preferable" plan.

The appellants assert that the division of Ross Township improperly resulted from negative political motivation, i.e., political gerrymandering. They contend that the final plan is detrimental to them because they are a minority in each of the House districts into which Ross Township is placed, two of which include parts of the City of Pittsburgh. It is argued that they do not share common interests with other areas with which they will share House districts.

In response to the numerous challenges made, the Commission responds that the final plan meets all of the requirements of the Pennsylvania Constitution, the United States Constitution and other applicable law. It maintains that the final plan meets the overriding constitutional mandate established by the state and federal constitutions that legislative districts be as nearly equal in population as practicable. Further, it claims that the districts are composed of compact and contiguous territory and that no political subdivision was divided in forming a district unless absolutely necessary. Upon compari-

son of the instant final plan with those previously approved by this Court, we agree.

The Commission persuasively argues that none of the appellants have met the heavy burden of establishing that the final plan, as a whole, is contrary to law. It asserts that although some of the appellants make conclusory or vague allegations of violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by political gerrymandering or vote dilution, violation of Article I, Section 5 of the Pennsylvania Constitution by denying access to free and equal elections or violation of the Voting Rights Act, none of the appellants have established any of the elements of these claims.[10]

The Commission cogently notes that the range of deviation from the ideal population, as well as the population ratio from the least populous to the most populous district,[11] compares favorably to those in other plans found to be constitutional by this Court and the United States Supreme Court. It observes that we have approved plans formulated by the Commission in 1981 and 1991 that reflected deviations ranging from 1.87% to 4.31% for the Senate and 2.81% to 5.46% for the House. It also cites to decisions of the United States Supreme Court sustaining deviations in state reapportionment plans significantly higher than those in this final plan. *See Brown v. Thomson*, 462 U.S. 835, 103 S.Ct. 2690, 77 L.Ed.2d 214 (1983) (16% average deviation); *White v. Regester*, 412 U.S. 755, 93

**10.** Specifically, we note that none of the appellants raising a claim of political gerrymandering have established the necessary elements for such a claim. These are

(1) intentional discrimination against an identifiable political group; (2) an actual discriminating effect on that group; and (3) a "history of disproportionate results appear[ing] in conjunction with strong indicia of lack of political power and the denial of fair representation."

*In re 1991 Reapportionment*, 530 Pa. 335, 609 A.2d 132, 142 (1992) (quoting *Davis v. Bandemer*, 478 U.S. 109, 139, 106 S.Ct. 2797, 92 L.Ed.2d 85 (1986)).

**11.** The Commission indicates that the population ratio from the least to most populous district is 1:1.04 for the Senate and 1:1.057 for the House.

S.Ct. 2332, 37 L.Ed.2d 314 (1973) (9.9% maximum deviation); *Gaffney v. Cummings,* 412 U.S. 735, 93 S.Ct. 2321, 37 L.Ed.2d 298 (1973) (7.83% maximum deviation).

As to appellants' claims that political subdivisions were split where it was not absolutely necessary, the Commission asserts that the factor that contributed most significantly to splits of the political subdivisions was the overriding objective that districts be substantially equal in population. Other factors reflected in the splits were the requirements of the Voting Rights Act and considerations of the population shifts in certain areas of the Commonwealth. The Commission asserts that, notwithstanding the demands imposed by all of the factors considered, the number of political subdivisions that were split under the final plan compare favorably with plans found to be constitutional by this Court.[12] Further, it observes that the number of political subdivisions split under the final plan remains small in comparison to the large number of political subdivisions in the Commonwealth.

The articulation of the requirements of Article II, Section 16 of the Pennsylvania Constitution is without controversy; indeed, the conflict arises only in its application. The parties find guidance and support in the same words from our state constitution. Yet, they arrive at opposite conclusions that are equally heartfelt. It is our observation that the tension existing between the appellants' positions and that of the Commission reflects their perceptions of what interest is at stake in determining whether divisions of political subdivisions are absolutely necessary.

The appellants urge us to consider the "homogeneity" and "shared interests" of a community as guidelines. We believe that these concepts are too elastic and amorphous, however, to serve as a judicial standard for assessing the reapportionment process. As the appellants' arguments indicate, these con-

12. The Commission states that in 1991, 26 counties were split in the Senate plan and 49 counties were split in the House plan. The 1981 plan split 26 counties in the Senate plan and 48 counties in the House plan. The 2001 plan split 29 counties in the Senate plan and 49 counties in the House plan. *See* Appendix to Brief of Respondent Pennsylvania Legislative Reapportionment Commission, Exhibit C.

cepts often reflect nothing more than continuation of the preexisting legislative districts. Should community interests be fostered merely by residing in the same district, we have no reason to believe that the current reapportionment of the legislative districts will not achieve this result with the passage of time.

Nor do we believe, as the appellants' argument suggests, that the reapportionment process failed to consider the interests of the communities across this Commonwealth. The legislative process envisioned by the Pennsylvania Constitution is particularly suited to the considerations of community interests that appellants claimed were overlooked. *See Butcher v. Bloom,* 415 Pa. 438, 203 A.2d 556, 569 (1964) ("The composition of the Legislature, the knowledge which its members from every part of the state bring to its deliberations, its techniques for gathering information, and other factors inherent in the legislative process, make it the most appropriate body for the drawing of lines dividing the state into senatorial and representative districts.") As we noted in *Specter,*

> The advantages of assigning the responsibility for reapportioning the Legislature to such a commission are quite obvious.... The equal representation on the Commission provided to the majority and minority members of each house precludes the reapportionment process from being unfairly dominated by the party in power at the moment of apportionment. In addition, the provision for a chairman who can act as a "tie-breaker" eliminates the possibility of a legislative deadlock on reapportionment.... At the same time the Legislature's expertise in reapportionment matters is essentially retained.

293 A.2d at 17–18.

Thus, in accordance with the precedents of this Court, we are satisfied that the Commission "has utilized the relevant population data to fashion a legislative districting plan in full compliance with the Constitution of the United States and the Constitution of this Commonwealth." *In re 1981 Reapportionment Plan,* 442 A.2d at 669. The appellants' request to have our Court remand the final plan for various alterations in

accordance with their respective positions is hereby denied and the appeals are dismissed.

Justice SAYLOR files a concurring opinion, joined by Justices CASTILLE and EAKIN, who also join the majority opinion.

Justice SAYLOR, concurring.

I join the majority opinion, as I believe that it is fully consistent with this Court's precedent governing the decennial undertaking of legislative redistricting. Nevertheless, I remain circumspect concerning the manner in which state constitutional requirements of compactness and integrity of political subdivisions have been applied by the Court in the prior decisions that are followed here, and I am receptive to the concern that the Court should not occupy an unduly passive role in the vindication of these essential precepts. I write, therefore, to express my own position that facets of the Commission's present plan for reapportioning the Pennsylvania Legislature test the outer limits of justifiable deference, at least in the absence of some specific explanation for why the constitutional prerequisites of compactness and respect for political subdivisions cannot be accommodated simultaneous with the maintenance of substantial equality of population and enforcement of voting interests of protected groups in the manner prescribed by federal law.

Justice CASTILLE and Justice EAKIN join this concurring opinion.